## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| EDWARD MARTIN, *individually and on behalf of those similarly situated,* | No: 1:22-cv-06925-KMW-EAP |
| Plaintiff, | |
| v. | |
| PHH MORTGAGE CORPORATION, *et al.,* | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF NAMED PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE SETTLEMENT AND PROVISIONAL CERTIFICATION OF RULE 23 CLASSES**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. iv

INTRODUCTION ........................................................................................................... 1

PROCEDURAL HISTORY.............................................................................................. 2

PROPOSED SETTLEMENT TERMS ............................................................................ 3

LEGAL ARGUMENT..................................................................................................... 6

   I.   Preliminary Approval is Appropriate.............................................................. 6

   II.   The Rule 23 Classes Should Be Provisionally Certified for Purposes of Settlement. ........ 8

     A.   The Proposed Classes Meet the "Numerosity" Requirement of Rule 23(a)(1). ............. 9

     B.   The Proposed Classes Meet the "Commonality" Requirement of Rule 23(a)(2). .......... 9

     C.   The Proposed Classes Meet the "Typicality" Requirement of Rule 23(a)(3).............. 10

     D.   The Proposed Classes Meets the "Adequacy" Requirement of Rule 23(a)(4). ............ 11

     E.   The Proposed Classes Meet the Predominance and Superiority Requirements of Rule 23(b)(3). ........................................................................................................ 12

   III.   The Court Should Preliminarily Approve the Proposed Settlement Under Rule 23. ... 13

   IV.   The Court Should Approve the Proposed Settlement Under the FLSA. ..................... 15

     A.   The Proposed Settlement is a Fair and Reasonable Resolution of a *Bona Fide* Dispute.. ........................................................................................................ 16

       1.   The Parties Have a *Bona Fide* Dispute. ................................................... 16

       2.   The Proposed Settlement is Fair and Reasonable. .................................... 17

     B.   The Settlement is Consistent with Public Policy. ....................................... 18

   V.   The Service Payments Are Reasonable and Appropriate. ............................... 18

   VI.   The Court Should Preliminarily Approve The Class Counsel's Fees And Costs Request.......................................................................................................... 19

   VII.   The Court Should Approve the Proposed Form of Notice and the Parties' Notice Plan.. ........................................................................................................ 21

CONCLUSION............................................................................................................. 22

iii

## TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ................................................... 8

*Austin v. Pa. Dep't of Corr.*, 876 F. Supp. 1437 (E.D. Pa. 1995) ................................. 14

*Beck v. Maximus, Inc.*, 457 F.3d 291 (3d Cir. 2006) .................................................... 11

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) ......................................................... 19

*Bullock v. Administrator of Estate of Kircher*, 84 F.R.D. 1 (D.N.J. 1979) .................... 14

*Castagna v. Madison Square Garden, L.P.*, 2011 U.S. Dist. LEXIS 64218 (S.D.N.Y. 2011) .... 17

*Chemi v. Champion Mortg.*, 2009 U.S. Dist. LEXIS 44860 (D.N.J. 2009) ................... 20

*Churchill Village, LLC v. Gen. Elec. Co.*, 361 F.3d 566 (9th Cir. 2004) ....................... 7

*Clark v. Ecolab*, 2010 U.S. Dist. LEXIS 47036 (S.D.N.Y. 2010) ................................ 17

*Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136 (E.D. Pa. 2000) ................................ 18

*Curiale v. Lenox Grp.*, 2008 U.S. Dist. LEXIS 92851 (E.D. Pa. 2008) ....................... 13

*D.R. by MR. v. East Brunswick Bd. of Educ.*, 109 F.3d 896 (3d Cir. 1997) ................ 18

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ............................................. 8

*Dugan v. Towers*, 2013 U.S. Dist. LEXIS 136305 (E.D. Pa. 2013) ............................ 13

*Ehrheart v. Verizon Wireless*, 609 F.3d 590 (3d Cir. 2010) ..................................... 6, 8

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) .................................................... 22

*Farris v. J.C. Penney Co.*, 176 F.3d 706 (3d Cir. 1999) ......................................... 16, 18

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975) ......................................................... 7, 13

*Grunin v. International House of Pancakes*, 513 F.2d 114 (8th Cir. 1975) ................. 22

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1988) ............................................ 7

*Henderson v. Volvo Cars of N. Am., LLC*, 2013 U.S. Dist. LEXIS 46291 (D.N.J. 2013) ........... 19

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y. 2000) ............... 8

iv

*In re Automotive Refinishing Paint Anti-Trust Litigation*, 617 F. Supp. 336 (E.D. Pa. 2007) ..... 22

*In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001)................................................ 20

*In re Cmty. Bank of N. Virginia*, 418 F.3d 277 (3d Cir. 2005) ..................................... 11

*In re Diet Drugs Prod. Liab. Litig.*, 369 F.3d 293 (3d Cir. 2004) ........................... 21, 22

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995)......... 13, 20

*In re Imprelis Herbicide Mktg., Sales Practices & Prods. Liab. Litig.*, 2013 U.S. Dist. LEXIS 149323 (E.D. Pa. 2013)........................................................................ 12, 13

*In re Imprelis Herbicide Mktg., Sales Practices, & Prods. Liab. Litig.*, 2013 U.S. Dist LEXIS 18332 (E.D. Pa. 2013)........................................................................ 13

*In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 282 (3d Cir. 2009)........................ 19

*In re Janney*, 2009 U.S. Dist. LEXIS 60790 (E.D. Pa. 2009) ..................................... 20

*In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998) ........................................................................................ 8, 10, 12, 19

*In re Safety Components, Inc. Sec. Litig.*, 166 F Supp. 2d 72 (D.N.J. 2001) .............. 20

*In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525 (E.D. Pa. 1990)........ 20

*In re Traffic Executive Ass'n*, 627 F.2d 631 (2d Cir. 1980) ....................................... 7

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004)..................... 6, 15

*Jamison v. Butcher & Sherrerd*, 68 F.R.D. 479 (E.D. Pa. 1975)............................... 14

*Johnston v. HBO Film Mgmt.*, 265 F.3d 178 (3d Cir. 2001) ..................................... 11

*Keller v. T.D. Bank, N.A.*, 2014 WL 5591033 (E.D. Pa. 2014) ................................ 14

*LaChance v. Harrington*, 965 F. Supp. 630 (E.D. Pa. 1996)..................................... 21

*Lawson v. AT&T Mobility, LLC*, 687 F.3d 109 (3d Cir. 2012)................................. 22

*Lenahan v. Sears, Roebuck & Co.*, 2006 U.S. Dist. LEXIS 60307 (D.N.J. 2006) .......... 15, 20

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982).......... 15, 16, 17

*Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072 (2d Cir. 1998)................. 7

*Morales v. PepsiCo, Inc.*, 2012 U.S. Dist. LEXIS 35284 (D.N.J. 2012)..................... 16

v

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)............................................. 21

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) .................................... 7

*Ripley v. Sunoco, Inc.*, 287 F.R.D. 300 (E.D. Pa. 2012)................................................. 9, 10, 11, 13

*Salinas v. U.S. Xpress, Inc.*, 2018 WL 1477127 (E.D. Tenn. 2018)............................................. 14

*Speed Shore Corp. v. Denda*, 605 F.2d 469 (9th Cir. 1979) ...................................................... 7

*Sullivan v. DB Invs., Inc.*, 667 F.3d 273 (3d Cir. 2011)....................................................... 8, 12

*Wal-Mart Stores v. Dukes*, 131 S. Ct. 2541 (2011) ........................................................... 8, 10

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) ......................................... 6

*Weigner v. City of N.Y.*, 852 F.2d 646 (2d Cir. 1988)........................................................... 21

*Williams v. Aramark Sports, LLC*, 2011 U.S. Dist. LEXIS 102173 (E.D. Pa. 2011) ................... 10

**Rules**

Fed. R. Civ. P. 23(a)(1).......................................................................................................... 9

Fed. R. Civ. P. 23(a)(2).......................................................................................................... 9

Fed. R. Civ. P. 23(a)(3)........................................................................................................ 10

Fed. R. Civ. P. 23(a)(4)........................................................................................................ 11

Fed. R. Civ. P. 23(b)(3)........................................................................................................ 12

Fed. R. Civ. P. 23(c)(2)........................................................................................................ 21

Fed. R. Civ. P. 23(e) ....................................................................................................... 8, 21

**Treatises**

Newberg On Class Actions § 11.41 (4th ed. 2002) ................................................................. 7

**Other Authorities**

*Court Awarded Attorney Fees, Report of Third Circuit Task Force*, 108 F.R.D. 237 (1985)...... 19

## INTRODUCTION

Subject to this Court's approval, the Parties have reached a settlement in this putative class and collective action.[1] Following months of negotiation, which included two mediation sessions, the Parties reached a settlement wherein Defendants PHH Mortgage Corporation, *et al*. (hereinafter collectively referred to as "Defendant" or "PHH"[2]) while denying any and all liability and disputing the amount of alleged damages, will pay $1,687,500 to settle all claims in this action.

As set forth in the proposed First Amended Complaint[3], attached to the Agreement as Exhibit A, Plaintiffs assert claims under the Fair Labor Standards Act ("FLSA"), and the wage and hour and wage payment statutes of New Jersey, Pennsylvania, and California. Specifically, Plaintiffs allege unpaid overtime wages under the FLSA and those states' laws due to PHH's alleged failure to properly calculate overtime rates by including incentive compensation in the regular rate. Under California law, Plaintiffs allege the additional following claims: (1) failure to timely pay all earned wages after separation as required by the California Labor Code and applicable wage orders; (2) violation of California laws requiring accurate wage statements; and (3) violation of California's Unfair Competition Law as a result of the alleged claimed violations. Finally, Plaintiffs allege PHH also violated New Jersey's wage payment law by allegedly failing

---

[1] For purposes of this Memorandum of Law, Named Plaintiff incorporates by reference the Definitions contained in the Settlement Agreement and Release ("Settlement Agreement" or "Agreement"), a copy of which is attached to the Declaration of Matthew D. Miller (Miller Decl.) as Exhibit A. Defined terms not otherwise defined herein are defined in the Settlement Agreement.

[2] "PHH" means PHH Mortgage Corporation and its predecessors, successors, parents, subsidiaries, parents, divisions, related companies, and affiliates.

[3] Per the Settlement Agreement, the First Amended Complaint, which, *inter alia*, adds claims under California law and Named Plaintiffs Anthony Dobrosi and Henry Ladines as plaintiffs, will become the operative pleadings upon this Court's preliminary approval of the Settlement. Agreement, §§ 1.6, 2.2(A)(2).

1

to timely pay all earned wages after separation. The $1,687,500 settlement will resolve such claims.

Plaintiffs make this unopposed motion: (1) to certify the Rule 23 settlement classes of mortgage loan officers and those with similar duties employed in Pennsylvania, New Jersey, and California; (2) for preliminary approval of the Settlement; and (3) for approval of the proposed form of Notice Packet and notice procedures. Although the Parties have already dedicated substantial time and resources to this litigation, the Parties anticipate spending much more time and resources should litigation continue, with both sides expending significant sums on discovery, motion practice, trial, and potential appeals. In the interest of judicial economy, and because the proposed settlement is fair, reasonable, and adequate, Plaintiffs respectfully request that the Court grant preliminary approval.

## PROCEDURAL HISTORY

On December 1, 2022, Named Plaintiff Edward Martin ("Named Plaintiff Martin") filed this action. (See DE 1). The Complaint includes claims for alleged unpaid overtime wages under the FLSA and New Jersey and Pennsylvania law. (*Id.*). Following discussions regarding the potential for early resolution, on May 18, 2023, the Parties jointly moved for a stay of the action so that they could go to mediation. (See DE 21). On June 8, 2023, the Court stayed the matter and ordered the Parties to participate in mediation with their chosen mediator, David S. Phillips, Esq. (DE 23).

On August 18, 2023, the Parties participated in mediation with Mr. Phillips, which did not result in a resolution. Following further discussions between the Parties, the Parties stipulated to conditional certification of the FLSA collective action on November 14, 2023, which the Court approved on December 21, 2023. (DE 28, 31). Following distribution of the notice of the collective

action, 138 individuals submitted their written consents to join the collective, including Anthony Dobrosi and Henry Ladines. (DE 32-36, 38, 40-43). Thereafter, the Parties agreed to participate in a second mediation session with Mr. Phillips, and the Court ordered them to do so. (DE 39).

On May 22, 2024, the Parties participated in a second session of mediation and reached an agreement to settle this matter and signed a term sheet. (DE 44).

The Parties engaged in significant informal discovery prior to reaching settlement. Specifically, PHH produced collective/class-wide pay and time records, which enabled the Parties to build damage models for the various claims asserted by Plaintiffs.

The proposed settlement requires PHH to pay $1,687,500.00 in exchange for a release of all wage and hour claims and derivative claims relating to the facts alleged in the Amended Complaint, during the relevant time periods, including, but not limited to, the claims in the Amended Complaint.

Named Plaintiffs now seek preliminary approval of the settlement.

## PROPOSED SETTLEMENT TERMS

The Parties agreed to the following terms:

1.    PHH will pay the Gross Settlement Amount of $1,687,500.00, *see* Agreement, § 1.16, which the Settlement Administrator will distribute to members of the Rule 23 classes (which should be provisionally certified for purposes of settlement only) and the FLSA collective action (hereinafter, collectively "Class Members" or "Class"), subject to the formula described below. (Agreement, § 3.1(D)). On or before the Settlement Effective Date, which is thirty (30) days after the Court issues the final approval order, PHH will wire the Gross Settlement Amount to the Settlement Administrator. (Agreement, §§ 1.35, 2.3).

2.      The Settlement Class includes all Collective Members and members of the Rule 23 Pennsylvania, New Jersey, and California classes, *see* Agreement, §1.32, who are individuals who worked for PHH as mortgage loan officers or in positions with similar duties during the relevant periods. (Agreement §§ 1.1-1.4). For Collective Members, the relevant period is from January 18, 2020 to January 1, 2023. (Agreement § 1.4). The relevant periods for Pennsylvania, New Jersey, and California Class Members begin on December 1, 2019, August 6, 2019 and May 18, 2019, respectively, and all end on May 22, 2024. (Agreement §§ 1.1-1.3).

3.      Subject to the approval of the Court, each Class Member will be fully advised of the Settlement pursuant to the Notice Packet attached to the Agreement as Exhibit C, which will be sent by the Settlement Administrator by U.S. First Class Mail and email. (Agreement, § 2.2(B)(4)). To provide the best notice practicable, before mailing the Notice Packet, the Settlement Administrator will take reasonable efforts to identify current addresses for Settlement Class Members through the U.S. Post Office's National Change of Address Database. (*Id.*). If any Notice Packet is returned as undeliverable, the Administrator will conduct Skip Tracing to identify alternative mailing addresses and re-mail the returned Notice. (*Id*. at § 2.2(B)(5)). The Notice Packet will advise each Settlement Class Member of the compensation they earned during the period relevant to them, which will be used to calculate their *pro rata* portion of the Net Settlement Fund. (Agreement, Ex. C, Notice, Sections 6-7).

4.      Individuals who do not opt out of the Settlement by submitting a timely and valid request for exclusion will be deemed Settlement Class Members and will receive a Settlement Check and release the Released Claims. (Agreement §§ 1.1-1.4, 1.8, 2.2(D), 4.1).

5.      A Settlement Class Member's Settlement Check amount will be a *pro rata* share of the Net Settlement Fund that takes into account their membership in a given Rule 23 class.

(Settlement Agreement, ¶ 3.1(D)). Each Settlement Class Member's *pro rata* share will be calculated based on the amount of compensation the Settlement Class Member earned during the periods relevant to them. Specifically, Pennsylvania and New Jersey Class Members shall receive 1.5 Allocation Points for each dollar of compensation they earned during the periods December 1, 2019 – May 22, 2024 and August 6, 2019 – May 22, 2024, respectively. (Settlement Agreement, ¶ 3.1(D)(i)-(ii)). California Class Members shall receive 1.1 Allocation Points for each dollar of compensation earned during the period May 18, 2019 and May 22, 2024. (Settlement Agreement, ¶ 3.1(D)(iii)). Finally, FLSA Collective Members shall receive 1 Allocation Point for each dollar during the period January 18, 2020 – May 22, 2024. (Settlement Agreement, ¶ 3.1(D)(iv)). To the extent any Class Member meets the criteria to be awarded points under more than one formula, the more beneficial formula shall be used. (Settlement Agreement, ¶ 3.1(D)).

6.      Fifty percent (50%) of each Settlement Class Member's share of the Net Settlement Fund shall be considered wages subject to withholding of all applicable local, state, and federal taxes, and the remaining half shall be allocated as non-wage damages for which no deductions or withholdings shall be made. (Settlement Agreement, § 3.4(B)(1)).

7.      The Parties will engage Simpluris as Settlement Administrator to administer the notice, allocation, and distribution of the Gross Settlement Amount, who will report periodically to counsel for Named Plaintiffs' counsel and PHH and whose fees will be paid from the Gross Settlement Amount. (Agreement, §§ 1.29, 2.2(B), 2.3, 3.1).

8.      Court-approved attorney's fees and costs, Service Awards, and the Settlement Administrator's fees will be paid from the Gross Settlement Amount. (Agreement, §§ 1.16, 3.1(A), 2.3). PHH will pay the Employer Payroll Taxes separately. (*Id.* §§ 1.12, 3.1(A)).

9.      Settlement Class Members shall have 180 days to cash their Settlement Checks. Following the 180-day period, the unclaimed settlement check funds will remain in the Escrow Account for an additional 90 days, and any Settlement Class Member may request a new check during this period and any time thereafter so long as money remains in the Net Settlement Fund. (Agreement, §§ 3.1(A)-(B)). Following the end of the 90-day period, the Settlement Administrator will submit the funds for any uncashed Settlement Check in the name of the Settlement Class Member to whom it was issued to the unclaimed property program of the state in which the Settlement Class Member resides. (*Id.* at § 3.1(B)).

10.     The Settlement provides for a full and final release and waiver of all wage and hour claims and derivative claims relating to the facts alleged in the Amended Complaint, during the relevant periods, including but not limited to, the claims in the Amended Complaint. (Agreement, §§ 1.8, 4.1). This release does not release any other claim(s), including other wage-and-hour claim(s) and expressly the Unreleased Claims, which are claims predicated on PHH's alleged failure to provide compliant paid rest periods under California law, including the failure to provide premium wages in lieu of providing compliant paid rest periods or any derivative claim based on such theory. (*Id.* at §§ 1.7, 4.2).

**LEGAL ARGUMENT**

**I.    Preliminary Approval is Appropriate.**

The law favors compromise and settlement of collective and class action suits. *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly

6

in the class action context") (internal quotations omitted); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation."); *Speed Shore Corp. v. Denda*, 605 F.2d 469, 473 (9th Cir. 1979) ("It is well recognized that settlement agreements are judicially favored as a matter of sound public policy. Settlement agreements conserve judicial time and limit expensive litigation."); *see also* NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

The approval of a proposed class action settlement is a matter of discretion for the trial court. *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *Churchill Village, LLC v. Gen. Elec. Co.*, 361 F.3d 566, 575 (9th Cir. 2004); *Maywalt v. Parker & Parsley Petroleum Co*., 67 F.3d 1072, 1079 (2d Cir. 1998). In exercising this discretion, courts should give "proper deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1988).

Preliminary approval, which is what Named Plaintiffs seek here, requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. NEWBERG § 11.25. To grant preliminary approval, the court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Executive Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980); NEWBERG § 11.25 ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness … and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members).

7

As explained herein, the Parties' proposed settlement meets all the requirements for preliminary approval as well as for certification of the Rule 23 classes.

## II.     The Rule 23 Classes Should Be Provisionally Certified for Purposes of Settlement.

A settlement class will be certified if it meets the requirements of Rule 23(a) and one of the subsections of Rule 23(b). *See, e.g., Wal-Mart Stores v. Dukes*, 131 S. Ct. 2541, 2548 (2011); *In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 309 (3d Cir. 1998). Rule 23(e) requires Court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). Notably, a class may be approved for settlement purposes even though that class might otherwise not pass muster under Rule 23. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273 (3d Cir. 2011). Here, the Parties' Rule 23 classes should be provisionally certified for purposes of settlement.

By reaching a favorable settlement prior to formal discovery, dispositive motions, or trial, the Parties seek to avoid significant expense and delay and instead ensure recovery for Settlement Class Members. *Ehrheart*, 609 F.3d at 594-95 (3d Cir. 2010) ("[T]he parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial."); *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ("Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them.").

As set forth below, the classes here meets the requirements of Rule 23(a) and (b)(3), and, accordingly, the Court should provisionally certify it for purposes of settlement.

### A. The Proposed Classes Meet the "Numerosity" Requirement of Rule 23(a)(1).

Rule 23(a)(1) requires the class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Courts in the Third Circuit typically hold that a putative class of about 40 individuals is sufficient to meet this requirement. *E.g., Ripley v. Sunoco, Inc.*, 287 F.R.D. 300, 307 (E.D. Pa. 2012).

Here, PHH has identified 104 individuals who meet the definition of a New Jersey Class Member, 29 employees who meet the definition of a Pennsylvania Class Member and 92 who meet the definition of a California Class Member and may benefit from the proposed settlement. Thus, the "numerosity" requirement is satisfied.

### B. The Proposed Classes Meet the "Commonality" Requirement of Rule 23(a)(2).

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Here, there are questions of law that are common to each of the classes.

As to the overtime laws of Pennsylvania, New Jersey, and California: whether PHH violated said laws by its alleged practice/policy not to include non-hourly wages as remuneration when calculating Class Members' regular rates. Whether PHH violated the New Jersey Wage Payment Law by its alleged practice/policy of paying final commissions to separated employees according to its commission plan rather than on the payday for the period during which their employment ended is also a question common to the New Jersey Class Members. Similarly, whether PHH's timing of the payment of final commissions to separated California Class Members violated the California Labor Code and whether the claims derivative of that claim and the claim for unpaid overtime wages violated California law (*i.e.,* the claims for failure to provide

9

accurate/itemized pay statements and for violation of the Unfair Competition Law) are common to the California Class Members.

That Class Members may receive varying amounts is not at odds with the "commonality" requirement. *See, e.g., Ripley*, 287 F.R.D. at 308 (relying on *Dukes*, 131 S. Ct. at 2551) ("while each [p]laintiff's recovery might be different due to the number of hours that he or she worked without proper compensation, the wrong was from [d]efendant's alleged common timekeeping and payroll policies that precluded proper compensation for overtime work.").

Accordingly, the "commonality" requirement is met.

### C.  The Proposed Classes Meet the "Typicality" Requirement of Rule 23(a)(3).

Rule 23(a)(3) requires that "the claims and defenses of the representative parties" be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The "typicality" requirement is "designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *Prudential*, 148 F.3d at 311. The cause of the injury claimed on behalf of the class must be a result of some alleged "common wrong." *Id.* at 312; s*ee also Williams v. Aramark Sports, LLC*, 2011 U.S. Dist. LEXIS 102173, at *10 (E.D. Pa. 2011) (finding typicality where named plaintiff "was paid under the same payroll policies as the rest of the [c]lass [c]embers, and those payroll policies form the basis of the [c]omplaints").

Here, the claims of Named Plaintiffs are typical of the claims of the Class Members they seek to represent. Named Plaintiffs' claims and the Class Members' claims are based on the alleged failure of PHH to pay them proper overtime wages due to PHH's alleged exclusion of non-hourly wages form their regular rates. Moreover, Named Plaintiffs' claims for untimely final commissions

under New Jersey (Named Plaintiff Martin) and California (Named Plaintiffs' Dobrosi and Ladines) law are typical of those same claims alleged on behalf of New Jersey Class Members and California Class Members.

Accordingly, the "typicality" requirement is met.

### D.  The Proposed Classes Meets the "Adequacy" Requirement of Rule 23(a)(4).

Rule 23(a)(4) requires "the representative parties" to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement "encompasses two distinct inquiries [1] whether the named plaintiffs' interests are sufficiently aligned with the absentees, and [2] [whether] it tests the qualifications of counsel to represent the class." *In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 303 (3d Cir. 2005) (internal quotation marks omitted); a*ccord, e.g., Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006); *Johnston v. HBO Film Mgmt.*, 265 F.3d 178, 185 (3d Cir. 2001); *Ripley*, 287 F.R.D. at 309.

Here, Named Plaintiffs have common interests with the Class Members for the same reasons they satisfy typicality: their claims arise from the same alleged factual and legal circumstances as claims of the Class Members. Additionally, Named Plaintiffs have vigorously prosecuted the interests of the Class Members by obtaining a highly favorable settlement. Finally, Named Plaintiffs are represented by counsel who have zealously and competently represented the Class Members' interests and have extensive experience litigating employment class actions, including wage-and-hour class and collective actions. (Miller Decl. ¶¶ 4-10 The adequacy requirement is therefore satisfied.

11

### E.  The Proposed Classes Meet the Predominance and Superiority Requirements of Rule 23(b)(3).

Once the requirements of Rule 23(a) are satisfied, a court may certify a class under Rule

23(b)(3) if "the court finds that the questions of law or fact common to class members predominate

over any questions affecting only individual members" (the "predominance" requirement), and

"that a class action is superior to other available methods for fairly and efficiently adjudicating the

controversy" (the "superiority" requirement). Fed. R. Civ. P. 23(b)(3). "The matters pertinent to

these findings include:

> (A) the class members' interests in individually controlling the
> prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the
> controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation
> of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

*Id*.

"[T]he focus of the predominance inquiry is on whether the defendant's conduct was

common as to all of the class members, and whether all of the class members were harmed by the

defendant's conduct." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 297 (3d Cir. 2011) (en banc).

*Accord, e.g., In re Imprelis Herbicide Mktg., Sales Practices & Prods. Liab. Litig.*, 2013 U.S. Dist.

LEXIS 149323, at \*18 (E.D. Pa. 2013). As set forth above in Section II.B. above, PHH's alleged

conduct challenged in the instant action is common to all Class Members within each class and is

alleged to have harmed all Class Members within each Rule 23 class in the same way.

"The superiority requirement asks the court to balance, in terms of fairness and efficiency,

the merits of a class action against those of alternative available methods of adjudication."

*Prudential*, 148 F.3d at 316 (internal quotation marks omitted); *see also, e.g., Imprelis*, 2013 U.S.

Dist. LEXIS 149323, at *19; *Ripley*, 287 F.R.D. at 310. Here, class-wide resolution of this matter is superior to individual claims because the amount of damages for the claims of most Class Members is comparatively small, whereas the size of the classes are quite large. Furthermore, the manageability of a class action—a component of the superiority inquiry—is a less important consideration when certification is sought of a settlement class, as is the case here. *See, e.g., Dugan v. Towers*, 2013 U.S. Dist. LEXIS 136305, at *11 (E.D. Pa. 2013).

Thus, the "predominance" and the "superiority" requirements are met.

## III.    The Court Should Preliminarily Approve the Proposed Settlement Under Rule 23.

In deciding a motion for preliminary approval of a Rule 23 class action settlement, a court considers whether: (1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected. *E.g., In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995); *In re Imprelis Herbicide Mktg.*, 2013 U.S. Dist LEXIS 18332, at *7; *Curiale v. Lenox Grp.*, No. 07-1432, 2008 U.S. Dist. LEXIS 92851, at *26 (E.D. Pa. Nov. 14, 2008).[4] The presence of these factors "establishes an initial presumption of fairness." *GMC*, 55 F.3d at 785. *Accord, e.g., Imprelis*, 2013 U.S. Dist. LEXIS, 18332, at *8. All of these factors are present here.

First, there is no question that the settlement negotiations here occurred at arm's length. Indeed, the Parties engaged in months of settlement discussions and good faith negotiations

---

[4] The Third Circuit has adopted a more rigorous nine-factor test for final approval of class action settlements. *GMC*, 55 F.3d at 785 (citing *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)). However, "the standard for preliminary approval is far less demanding." *Curiale*, 2008 U.S. Dist. LEXIS 92851, at *27 n.4 (internal quotation marks omitted).

culminating in an agreement reached after participation in two mediations and additional negotiations between counsel for the Parties.

Second, there has been an extensive exchange of information between the Parties in anticipation of the settlement discussions. (Miller Decl. ¶ 11). PHH produced pay and time records for all Class Members and dates of separation for California and New Jersey Class Plaintiffs. This discovery enabled Named Plaintiffs' counsel to evaluate the strengths and weaknesses of the claims and calculate estimates of class-wide damages.

Third, counsel for Named Plaintiffs have considerable experience and success in prosecuting, defending, and settling wage and hour claims, including Rule 23 class actions and FLSA collective actions. (Miller Decl. ¶¶ 4-10; *see also Keller v. T.D. Bank, N.A.*, 2014 WL 5591033, *15 (E.D. Pa. 2014) (Restrepo, J.) (finding Swartz Swidler "has considerable experience handling class and collective action disputes."); *Salinas v. U.S. Xpress, Inc.*, 2018 WL 1477127, *6 (E.D. Tenn. 2018) ("Plaintiffs' counsel has substantial experience litigating complex wage and hour actions, including class actions and certified collective actions with tens of thousands of class members"). The recommendation of settlement by such experienced counsel is entitled to significant weight. *See, e.g., Austin v. Pa. Dep't of Corr.*, 876 F. Supp. 1437, 1472 (E.D. Pa. 1995) ("in determining the fairness of a proposed settlement, the court should attribute significant weight to the belief of experienced counsel that settlement is in the best interest of the class"); *Bullock v. Administrator of Estate of Kircher*, 84 F.R.D. 1, 4 (D.N.J. 1979) (*citing Jamison v. Butcher & Sherrerd*, 68 F.R.D. 479, 481-82 (E.D. Pa. 1975) (finding that counsel is "intimately associated with the litigation and consequently far more able to weigh its relative strengths and weaknesses")).

14

Fourth, thus far there have been no objections to the proposed settlement, though, candidly, notice has not yet been sent to Class Members; that awaits the Court's certification of the settlement classes, as discussed above, and approval of the form of notice, as discussed below. Named Plaintiffs have expressed their acceptance of the Settlement and signed the Settlement Agreement.

In short, as the Settlement was a product of arm's length negotiations, the negotiations followed the exchange of substantial discovery, the counsel involved are experienced with wage and hour collective and class action litigation, and Named Plaintiffs have accepted the Settlement, the Court should "apply an initial presumption of fairness" to the settlement and grant preliminary approval of same. *Warfarin*, 391 F.3d at 535. In light of the uncertainties and costs associated with protracted litigation, PHH has agreed to settle this action for a significant amount—$1,687,500.00. The Gross Settlement Amount represents a fair value of the attendant risks of litigation, even though recovery could be greater if this case was won at trial and survived through appeal. If PHH prevailed in its defenses to Named Plaintiffs' claims, Class Members would recover far less, and many would recover nothing. And it is well-settled that a settlement of a class action may be appropriate even where the settlement is only a fraction of the ultimate total exposure should the case be won at trial. *See Lenahan v. Sears, Roebuck & Co.*, 2006 U.S. Dist. LEXIS 60307, at *48 (D.N.J. 2006) (approving $15 million settlement when maximum exposure at trial may have been as high as $104 million because of the uncertainty of the final disposition of a trial).

## IV.    The Court Should Approve the Proposed Settlement Under the FLSA.

The decision to approve the settlement of an FLSA collective action lies within the trial court's discretion. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982). In exercising that discretion, the Court should be mindful of the strong presumption in favor of

settlement. *E.g., Farris v. J.C. Penney Co.*, 176 F.3d 706, 711 (3d Cir. 1999); *Morales v. PepsiCo, Inc.*, 2012 U.S. Dist. LEXIS 35284, at *3 (D.N.J. 2012).

## A. The Proposed Settlement is a Fair and Reasonable Resolution of a *Bona Fide* Dispute.

"To approve a settlement resolving claims under the FLSA, the Court must scrutinize its terms for fairness and determine that it resolves a bona fide dispute." *Bredbenner*, 2011 U.S. Dist. LEXIS 38663, at *50 (citing *Lynn's*, 679 F.2d at 1354). Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate guarantor of fairness. *Lynn's*, 679 F.2d at 1353-54; *Bredbenner*, 2011 U.S. Dist. LEXIS 38663, at *51. If the proposed settlement reflects a "reasonable compromise of disputed issues," the court should approve the settlement. *Lynn's*, 679 F.2d at 1354; *accord Bredbenner*, 2011 U.S. Dist. LEXIS 38663, at *52.

### 1. The Parties Have a *Bona Fide* Dispute.

The Parties' agreement settles a disputed legal claim under the FLSA based on disputed facts. Named Plaintiffs claim PHH failed to pay all overtime wages owed by not including non-hourly wages, including commissions, in the regular rate. At all times, PHH has disputed its liability on these claims, asserted a number of substantive and procedural defenses to liability and, even assuming its liability, maintained that there would be no damages or that damages would be limited. PHH's defenses include its argument that FLSA Collective Members are not entitled to overtime wages under the FLSA's Section 207(i) so-called inside sales exemption[5], which covers employees who earn commissions at retail or service establishments. PHH also argues that, even if liability could be established, it did not violate the law willfully and had a good faith basis for

---

[5] PHH also asserts that Class Members are exempt from overtime wages under Pennsylvania, New Jersey, and California law under state law exemptions analogous to the inside sales exemption.

believing its policies were in compliance with the FLSA, which would limit the statute of limitations to only two years instead of three and preclude liquidated damages.

Thus, there are *bona fide* disputes between the Parties that were resolved through the arm's length mediated settlement. *Bredbenner*, 2011 U.S. Dist. LEXIS 38663, at *50-52.

## 2. The Proposed Settlement is Fair and Reasonable.

The terms of the proposed settlement are fair. As noted above, courts look to the adversarial nature of a case as an indicator of the fairness of the settlement. *Lynn's*, 679 F.2d at 1353-54; *Bredbenner*, 2011 U.S. Dist. LEXIS 38663, at *50-51; *Clark v. Ecolab*, 2010 U.S. Dist. LEXIS 47036, at *24 (S.D.N.Y. 2010). The Parties' settlement negotiations also demonstrate fairness. The Parties negotiated the Settlement during two full-day mediation sessions, which "virtually insures that the negotiations were conducted at arm's length and without collusion between the parties." *Bredbenner*, 2011 U.S. Dist. LEXIS 38663, at *30; *accord, e.g., Castagna v. Madison Square Garden, L.P.*, 2011 U.S. Dist. LEXIS 64218, at *14 (S.D.N.Y. 2011).

The Settlement here carries other indicia of fairness. Throughout the process, Named Plaintiffs were represented by competent counsel experienced in wage-and-hour class litigation. (Miller Decl. ¶¶ 4-10). Furthermore, the Settlement was consummated after substantial investigation, which included the production of class-wide time and pay data so that the Parties were fully informed of the legal issues and evidence. Significantly, Named Plaintiffs and the FLSA Collective Members will receive the settlement money promptly, avoiding the risks and delay inherent in continued litigation. These factors clearly establish fairness. *Bredbenner*, 2011 U.S. Dist. LEXIS 38663, at *29-30, 50-52.

Accordingly, the proposed settlement is fair and reasonable.

**B.  The Settlement is Consistent with Public Policy.**

Like other jurisdictions, the Third Circuit recognizes a strong public policy in favor of settlements, since "they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by courts." *D.R. by MR. v. East Brunswick Bd. of Educ.*, 109 F.3d 896, 901 (3d Cir. 1997).

Here, the Settlement is consistent with that policy because it resolves a pending case on behalf of 138 FLSA Collective Members and avoids a jury trial and likely appeals. Because the Settlement represents a fair settlement of a *bona fide* dispute, public policy weighs heavily in favor of approval. *Id.; see also Farris*, 176 F.3d at 711.

**V.    The Service Payments Are Reasonable and Appropriate.**

Service payments are the norm in the Third Circuit in wage-and-hour class litigation. *Bredbenner*, 2011 U.S. Dist. LEXIS 38663, at *64. Their purpose is to compensate representative plaintiffs "for the services they provided and the risks they incurred during the course of the litigation." *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000). Named Plaintiffs here took risks as the putative Rule 23 class representative. Their services included the filing of a hybrid collective/class action that provides a large group of current and former PHH employees with the opportunity to recover a portion of their allegedly unpaid compensation. Named Plaintiffs assisted counsel in investigating the claims and provided documents and information as part of the informal discovery the Parties engaged in prior to settlement negotiation.

At the final approval stage, Named Plaintiffs intend to seek Court approval for the payment of $10,000 to Named Plaintiff Martin and $7,500 each to Named Plaintiffs Dobrosi and Ladines The Service Payments are well within the accepted range in this District as numerous courts have awarded service awards equal to or higher than those proposed here. *See e.g., In re Ins. Brokerage*

18

*Antitrust Litig.*, 579 F.3d 241, 282, 284 (3d Cir. 2009) ($10,000 service award); *Henderson v. Volvo Cars of N. Am., LLC*, 2013 U.S. Dist. LEXIS 46291 (D.N.J. 2013) (six named plaintiffs received service award of either $5,000 or $6,000); *In re Mercedes-Benz Tele Aid Contract Litig.*, 2011 U.S. Dist. LEXIS 101995, at *16-17 (D.N.J. 2011) ($5,000 to each representative plaintiff); *Bredbenner*, 2011 U.S. Dist. LEXIS 38663, at *68 ($10,000 for each representative plaintiff).

## VI.    The Court Should Preliminarily Approve The Class Counsel's Fees And Costs Request.

The final decision regarding the reasonableness of class counsel's fees and costs should be made during the Final Approval Hearing, following notice to Class Members and the objection period. The reasonableness of such fees and costs are better evaluated after such period, as this Court will be made aware of any objections by then and class counsel will spend a substantial amount of additional time and effort working on this matter from the date of the instant motion through the date of the Final Approval Hearing.

However, it is worth noting that the attorney's fees in this matter are requested as a percentage of the settlement, which is the favored method for calculating attorney's fees in such cases. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478-79 (1980); *In re AT&T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006); *In re Prudential Ins. Co. America Sales Practice Litig. Agent*, 148 F.3d 283, 333 (3d Cir. 1998); *Court Awarded Attorney Fees, Report of Third Circuit Task Force*, 108 F.R.D. 237 (1985); *Bredbenner*, 2011 U.S. Dist. LEXIS 38663 at *52-53 (D.N.J. 2011) (common fund distribution for attorney's fees in hybrid FLSA/Rule 23 wage and hour case). The percentage-of-recovery method "is the prevailing methodology used by courts in this Circuit for wage-and-hour cases." *Bredbenner*, 2011 U.S. Dist. LEXIS at *53 (citing *Chemi v. Champion Mortg.*, 2009

19

U.S. Dist. LEXIS 44860 (D.N.J. 2009)); *In re Janney*, 2009 U.S. Dist. LEXIS 60790 (E.D. Pa. 2009); *Lenahan v. Sears, Roebuck & Co.*, 2006 U.S. Dist. LEXIS 60307 (D.N.J. 2006).

Even in cases where statutory attorney's fees attach, such as in FLSA cases, the percentage-of-recovery doctrine is still the preferred manner to calculate attorney's fees. The lodestar method, whereby the attorney's time is multiplied by the reasonable hourly rate, remains *disfavored* because "regardless [of] how a total settlement structure is formally structured … every dollar given to class counsel means one less dollar for the class." *In re Cendant Corp. Litig.*, 264 F.3d 201, 256 (3d Cir. 2001); *see also In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d at 821-22 (rejecting lodestar fee and directing that percentage-of-recovery should have been utilized even though the agreement for fees was ostensibly distinct from the agreement to pay class members because of "economic reality" of such arrangement).

In common fund cases, fee awards generally range anywhere from nineteen percent (19%) to forty-five percent (45%) of the settlement fund. *See In re Gen. Motors*, 55 F.3d at 822; *citing In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 533 (E.D. Pa. 1990). Here, class counsel intends to request a fee of thirty-three and one-third percent (33 1/3%) of the settlement fund, totaling $562,500.00. This percentage is in line with what is routinely provided in such cases. *See, e.g. Bredbenner*, 2011 U.S. Dist. LEXIS at *60-61; *In re Safety Components, Inc. Sec. Litig.*, 166 F Supp. 2d 72, 102 (D.N.J. 2001) (granting award of 33 1/3% in common fund case and citing to ten cases from this Circuit holding the same).

Hence, while counsel will further substantiate this request prior to the Fairness Hearing (after any objections will be known), a preliminary determination that the fee request is fair is appropriate.

**VII.    The Court Should Approve the Proposed Form of Notice and the Parties' Notice Plan.**

To satisfy due process, notice to class members must be "reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *LaChance v. Harrington*, 965 F. Supp. 630, 636 (E.D. Pa. 1996) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). The form of notice must be sufficient to accomplish this purpose in accordance with the dictates of Fed. R. Civ. P. 23(c)(2) and 23(e). Furthermore, "[a]lthough the notice need not be unduly specific … the notice document must describe, in detail, the nature of the proposed settlement, the circumstances justifying it, and the consequences of accepting and opting out of it." *In re Diet Drugs Prod. Liab. Litig.*, 369 F.3d 293, 308-10 (3d Cir. 2004) (internal quotations omitted). *Accord Weigner v. City of N.Y.*, 852 F.2d 646, 649 (2d Cir. 1988).

Here, the form and method of notice of the Parties' proposed settlement satisfies all due process considerations and meets the requirements of the Federal Rules of Civil Procedure. In particular, the Notice Packet (*see* Settlement Agreement, Exhibit C), provides detailed information about the settlement terms (including the formula used to calculate each Class Member's Settlement Award and an estimate of same). It also sets forth Class Counsel's intent to request attorneys' fees, reimbursement of expenses, the Service Awards for Named Plaintiffs, the maximum amounts that will be sought for same, and detailed information about the claims being released. In addition, the Notice provides information about the date for the Fairness Hearing, Class Members' right to object (and deadlines and procedures for objecting), and the procedure to receive additional information. Further, the Notice Packet provides Class Members with contact information for the Settlement Administrator and undersigned counsel. The Notice Packet also

21

explains to Class Members how they can object to or opt out of the settlement. *In re Automotive Refinishing Paint Anti-Trust Litigation*, 617 F. Supp. 336, 345-46 (E.D. Pa. 2007).

The proposed notice procedure also satisfies due process considerations. The proposed notice procedure, including individualized mailing and procedural safeguards such as skip tracing for undelivered notices (Agreement, §§ 2.2(B)(4)-(5)) has been recognized as the best notice that practicably can be given to absent class members. *See, e.g., Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175 (1974); *Lawson v. AT&T Mobility, LLC*, 687 F.3d 109, 123-24 (3d Cir. 2012); *In re Diet Drugs*, 369 F.3d at 308-310; *Grunin v. International House of Pancakes*, 513 F.2d 114, 121-22 (8th Cir. 1975). The Agreement further provides a forty-five (45) day deadline for requesting exclusion or objecting. (Agreement, §§ 2.2(C)-(D).

Accordingly, the form of the Notice Packet and proposed notice procedures satisfy both due process and the requirements of Rule 23 and should be approved.

## CONCLUSION

Named Plaintiffs respectfully request that this Court grant their Motion: (1) to certify the putative classes of Pennsylvania, New Jersey, and California employees under Federal Rule of Civil Procedure 23(b)(3) (on a provisional basis, for settlement purposes only); (2) for preliminary approval of the Settlement with respect to the Rule 23 classes claims; (3) for preliminary approval of the Settlement under the FLSA; and (4) for approval of the proposed form Notice Packet and notice and settlement procedures. Named Plaintiffs respectfully submit the accompanying proposed Preliminary Approval Order that sets forth the specifics of the preliminary approval requested.

*(Signature on following page)*

22

Respectfully submitted.


/s/ Matthew D. Miller
Matthew D. Miller, Esq.
Justin L. Swidler, Esq.
Joshua S. Boyette, Esq.
**SWARTZ SWIDLER, LLC**
9 Tanner Street, Suite 101
Haddonfield, NJ 08033
Phone: (856) 685-7420
Fax: (856) 685-7417


Date: October 11, 2024